KENNETH C. SPINKS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; KENNETH C. SPINKS AND SHARYN L. SPINKS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spinks v. Commissioner
Docket Nos. 7709-83, 7710-83.
United States Tax Court
T.C. Memo 1985-588; 1985 Tax Ct. Memo LEXIS 43; 51 T.C.M. (CCH) 30; T.C.M. (RIA) 85588; December 3, 1985. Kirk A. McCarville, for the petitioners. Patricia Beary, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in, and additions to, petitioners' Federal income tax as follows: Docket
Additions to Tax
Number
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
7709-83
1976
$900.06
$225.01
$65.00
7710-83
1977
4,078.00
1,019.50
446.20
1978
2,883.00
720.25
295.35
1979
1,538.00
384.50
76.90
1980
8,090.18
404.50
*44 The issue for decision is whether certain expenses claimed by petitioner Kenneth C. Spinks were properly deducted under section 162(a)(2) as traveling expenses incurred while away from home in the pursuit of a trade or business. The question turns upon whether Spinks was "away from home" when the expenses were incurred, specifically, 1) whether La Porte, Texas was Spinks' "tax home" and 2) whether his employments at various jobsites were temporary or indefinite. Also at issue are respondent's determinations of additions to tax for failure to file a return (section 6651(a)) and for negligence or intentional disregard of rules and regulations (section 6653(a)). FINDINGS OF FACT The stipulated facts and attached exhibits are so found. At the time the petitions were filed, petitioners resided in St. Louis, Missouri. Petitioners married on October 23, 1977, and have been married continuously since then. Petitioner Sharyn L. Spinks is a party only because she filed joint returns with her husband for calendar tax *45 years 1977-1980. The joint return for 1980 was timely filed with the Internal Revenue Service Center at Austin, Texas. The joint returns for 1977-1979 were filed late at that location in December 1980, as was petitioner Kenneth C. Spinks' (hereinafter Spinks or petitioner) individual tax return for 1976. Petitioner moved with his family from Luling, Texas to Deer Park, Texas when he was six years old. He attended schools in that community, graduating from Deer Park High School in 1965. Deer Park is located approximately five miles from La Porte, Texas, and both are approximately sixty miles southeast of Houston, Texas. Spinks' mother moved to La Porte in 1965; his grandmother and three uncles live in the Houston area. Spinks left home in 1965 to attend the University of Texas, at Austin, from which he graduated in May 1969 with a Bachelor of Science in Aerospace Engineering. His specialization was in aircraft structures. He worked after graduation as an employee of the Boeing Compnay in Seattle, Washington, and later, the Rockwell Corporation in Los Angeles, California, staying approximately two years with each employer. While employed at Rockwell, petitioner learned of *46 the "job shopper" employment arrangement utilized by the engineering departments of large aerospace firms. Because manpower requirements usually vary over the life cycle of a project, a firm will often seek temporary personnel (job shoppers) through a contract engineering company, thereby avoiding the dilemma of hiring direct employees who would later have to be laid off when manpower demand declined. The job shopper, then, is an employee of the contract service firm, not the client aerospace firm, and understands that his assignment is of limited duration. An engineer generally makes his availability known to the contract service companies by sending out resumes, and the service companies often obtain information regarding the manpower requirements of the client firms through trade periodicals. The individual employed under the job shopper arrangement generally receives substantially higher compensation than a direct employee, but he usually receives fewer fringe benefits than the latter. After leaving Rockwell, petitioner worked at Hughes Aircraft Company in Los Angeles under the job shopper arrangement. Upon termination of that assignment in 1974, he returned to the La Porte/Houston *47 area because, he testified, "I needed to go back to Houston and establish a home, and I wanted to go back to Houston to look for work there, too." He hoped to obtain a position with the National Aeronautics and Space Administration ("NASA") Johnson Space Center or with a private sector firm working for NASA such as McDonnell Douglas, Rockwell, or Lockheed. Petitioner stayed with his mother, Sytha H. Spinks, at her home in La Porte while in the Houston area and paid her $50 per month and a portion of the utility expenses for use of part of the house. Spinks circulated resumes to job shop companies in the area and was placed by one of them, in June 1974, with Bell Helicopter in Fort Worth, Texas. While working in Fort Worth, petitioner took an apartment in that area, but continued to pay his mother rent and utilities to "reserve" his room in La Porte since he could not predict when he would or would not need accommodations there. Spinks wished to maintain a permanent mailing address at his mother's home in La Porte, and arranged with his mother to have his correspondence forwarded to him. In June 1975, petitioner was laid off by Bell, but before he could effect his plans to return *48 to La Porte, he was approached by the same job shopper firm with another offer from Bell, this time as a reliability engineer. Upon layoff from this second engagement with Bell, in July 1976, Spinks returned to La Porte, but was unable to find work in the Houston area. He was placed by a job shopper firm, in February 1977, with Martin Marietta in New Orleans, Louisiana. He worked there for a period of approximately five months, and then quit the job after a disagreement with management. A factor which had induced petitioner to take the New Orleans assignment was that it offered one of the highest rates of pay in the country for his specialty. The conflict which caused him to quit the job arose from a decision by the company to reduce the rate of pay for a group of job shoppers, of which petitioner was one. Again unable to find employment in the Houston area, petitioner learned of a position, which he accepted in July 1977, with McDonnell Douglas in St. Louis, Missouri. He was hired directly by McDonnell Douglas without being placed through a job shopper firm, but his terms of employment were the same as if he had been placed by one of the contract service firms. He traveled *49 there from New Orleans, stopping in La Porte to see his family and to attend to some miscellaneous matters. It was while he was in St. Louis, in 1977, that petitioner married Sharyn Spinks. After working approximately one year in St. Louis, petitioner quit his job because he "wanted to get back to Houston and get started on the construction" of an addition to his mother's house. At his own expense, Spinks enlarged his portion of the house, adding a laundry area and a bath, and increasing the closet space. Petitioners remained in La Porte for approximately one year, during most of which time Spinks personally performed the work on the addition. He received no offers for employment in the Houston area during this period, but did receive an offer to work at Grumman Aircraft in New York. He turned the offer down because he wished to remain in the Houston area. Petitioner was placed, in August 1979, with Babcock and Wilcox in Akron, Ohio. He remained at this job for approximately seven months, until he was laid off in February 1980. In March 1980, he returned to St. Louis, again working as a direct employee of McDonnell Douglas. The terms of his employment were the same as those *50 in his previous engagement with that firm, and he remained employed there until he was laid off in April 1981. In the course of this second employment with McDonnell Douglas, petitioner received a job offer from the Houston division of that firm. Spinks declined the offer because he believed that transfer directly from St. Louis to Houston would not be possible, and that an interim period of unemployment or employment with another firm would be required. Spinks testified that he felt it was very bad to quit a job shopping assignment and that he would quit "only under very unusual circumstances." During the years in issue, Spinks was "continually getting calls" from Houston-based job shopping firms regarding employment opportunities in the Houston area, but did not accept any of the job offers because of his policy against quitting a current assignment. Throughout the years in issue, Spinks maintained his Texas driver's license. He also held driver's licenses in Louisiana and Missouri during the same period. (It is not clear whether Sharyn Spinks held her Texas license beyond 1977.) Spinks maintained Texas voter registration for at least 1978-1980. Petitioners kept a Houston *51 bank account throughout 1977-1980, as did Spinks individually in 1976. They also held accounts with banks in Louisiana, Missouri, and Ohio within the same period. Likewise, petitioners maintained motor vehicle registrations and auto insurance in Texas during these years, but they also registered vehicles in Missouri and Ohio. Sharyn Spinks attended community colleges in Texas, Missouri, and Ohio in this period. She chose as her curriculum applied science for technical illustration so that she would be able to move around freely and seek temporary jobs in different locales. The expenses for which petitioners claimed deductions included, inter alia, costs incurred for meals, apartment rent, hotel and motel rooms, commuting to and from work, purchase of several vehicles, insurance for the same, purchase of a barbecue grill, and a dog license fee. These deductions are summarized as follows: Docket No.
Year
Income
Claimed Deduction
7709-83
1976
$9,993.12
$4,625.00
7710-83
1977
33,957.18
10,969.00
1978
29,839.28
9,378.00
1979
14,784.00
10,800.00
1980
68,681.40
20,760.00
OPINION The "purpose of [section 162(a)(2)] [2] is to mitigate *52 the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." ; ; . A deduction is allowed under section 162(a)(2) only if a taxpayer can demonstrate that the expenses claimed: 1) were ordinary and necessary, 2) were incurred while "away from home," and 3) were incurred in the pursuit of a trade or business. , rehearing denied . Ordinarily, if the location of a taxpayer's abode differs from the vicinity of his workplace, then his "tax home" for purposes of this section is his principal place of employment. However, we have recognized an exception to this general rule when a taxpayer's employment, due to business reasons, takes him temporarily (as distinguished from indefinitely) to a location distant from his abode. . The burden *53 of proof rests with the taxpayer. ; Rule 142(a).[3]
An obvious precondition to a taxpayer being away from home is that he must first have a home from which he can be away. ; If a taxpayer has no such permanent residence, and no principal place of employment, then he is an itinerant for purposes of section 162(a)(2). . [4]
*54 Petitioner contends that La Porte was his home during the years in issue (and the home of Sharyn Spinks for the last four of those years) and further asserts that the deductions claimed were duplicate living expenses incurred while temporarily away from home due to business exigencies. Respondent's disallowance of the deductions is based upon the determination that petitioners were itinerants without a permanent place of residence, and that the expenses were incurred for personal, not business, reasons. We agree. Petitioners' minimal contacts with the La Porte area are insufficient to establish it as their "tax home" for purposes of section 162(a)(2). In evaluating whether a taxpayer's putative home is bona fide, we will not be swayed by mere formalisms, but rather will examine the totality of the circumstances. Here, the facts regarding Spinks' maintenance of bank accounts, a driver's license, voter registration, and vehicle registrations and insurance in Texas during the years in issue are of limited probative value. While these objective factors might be indicative of subjective intent, they are ones which can be easily manipulated and must be weighed accordingly. Their *55 cogency is further diluted in light of the facts that petitioner also held licenses in Louisiana and Missouri, registered vehicles in Missouri and Ohio, and maintained bank accounts in all three of those states within that same period. The record contains no indication that petitioner exercised his Texas voter registration by actually voting there. Because the purpose of section 162(a)(2) is to provide a measure of relief to the taxpayer who must incur duplicate living expenses, it is elemental to the application of that section that the taxpayer "incur substantial continuing living expenses at a permanent place of residence." , citing Spinks' payment of $50 per month ($600 per year) to "reserve" a room in his mother's home is dwarfed by the amounts claimed during the years in issue, which averaged over $11,000 per year. Even when considered in conjunction with the utilities and other expenses cited by petitioners, we find that the costs incurred in the La Porte area did not constitute substantial continuing living expenses. The improvement made by Spinks to his mother's *56 home was not a continuing living expense. The aforementioned circumstances lead us to conclude that La Porte was not petitioners' tax home for purposes of section 162(a)(2). Spinks abandoned the Deer Park/La Porte area as his home in 1965, residing in Austin, Texas until 1969, Seattle, Washington until 1971, and Los Angeles, California until 1974. His attempt to reestablish La Porte as his tax home upon his return failed. Petitioners used a room in Sytha Spinks' house as a place to store clothing, furnishings, and other personal property which they did not require while at the various distant jobsites, and as a place to stay when Spinks was between jobs. Although petitioner asserts that he continually sought work near La Porte or Houston, he was never employed as an engineer in that vicinity and declined all offers he received for work in the area. His reason was that he allegedly did not want to impair his future employment opportunities by quitting an assignment to accept a job offer in the Houston area. The evidence, however, reveals that Spinks quit two of the five employment assignments he held during the years in issue, one because of a dispute over pay, and the other *57 for personal reasons. Petitioner's wife, Sharyn Spinks, traveled with him to each of the jobsites. She chose a curriculum of study at various community colleges which would be enable her to obtain temporary jobs and thereby move around freely. We find that Spinks' intent was not to reside and work in the vicinity of La Porte, but rather to work under an employment arrangement (and to select job assignments under that arrangement) which would maximize his income, regardless of the work location. The tax statute is not intended to be a barrier to such a choice. The decision was, however, one which was made for personal reasons and not because of business exigencies. The expenses therefore do not come within the ambit of section 162(a)(2). Since petitioners had no bona fide permanent place of residence (and Spinks had no primary place of employment) we hold that their "tax home" traveled with them and therefore there was no "home" from which they could be away for purposes of section 162(a)(2). Accordingly, we sustain respondent's disallowance of the claimed deductions. Because of our holding there is no need to address the issue whether the employments at the various jobsites *58 were temporary or indefinite. Petitioners have presented no evidence to controvert respondent's additions to tax for failure to file timely returns (section 6651(a)(1)) and for negligence or intentional disregard of rules and regulations (section 6653(a)(1)). Because petitioners have failed to carry their burden of proof, we sustain the additions to tax determined by respondent. Decisions will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect in the tax year or years in issue.↩
2. Section 162(a)(2) provides as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or exravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * ↩
3. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedure.↩
4. See generally, , affd. , and cases cited therein.↩